IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 14, 2005 Session

## RAYMOND T. SCHMIDT, JR. v. BARBARA J. SCHMIDT

**An Appeal from the Chancery Court for Montgomery County**
**No. 99-08-0110      Carol A. Catalano, Chancellor**

---

**No. M2004-01350-COA-R3-CV - Filed September 15, 2005**

---

This is a petition to modify alimony. The divorce decree required that the husband pay the wife alimony of $1,500 per month for ten years or until she remarries. The husband filed this petition to terminate his alimony obligation, asserting that there had been a material change in circumstances. The wife maintained that the alimony award was alimony *in solido* and, therefore, not subject to modification. The husband filed a motion for summary judgment on the issue of whether the alimony award was modifiable. The trial court held that the alimony award was alimony *in solido*, not subject to modification. From that order, husband now appeals. We reverse, concluding that the award was alimony *in futuro* and, therefore, subject to modification.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Reversed and Remanded

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

Carrie W. Gasaway, Clarksville, Tennessee, for the appellant, Raymond T. Schmidt, Jr.

Kim A. McMillan, Clarksville, Tennessee, for the appellee, Barbara J. Schmidt.

### OPINION

Petitioner/Appellant Raymond T. Schmidt, Jr. ("Husband"), and Respondent/Appellee Barbara J. Schmidt ("Wife") were married. On September 22, 1999, the parties filed a Marital Dissolution Agreement ("MDA") in the trial court below. On October 29, 1999, the trial court entered a final decree of divorce, incorporating verbatim the alimony terms of the MDA. The final decree required Husband to pay Wife alimony as follows:

11. Beginning the first day of the month immediately following the Final Decree, the Husband shall pay to the Wife the sum of $1,500.00 per month for ***alimony support for a period of ten (10) years or until such time she remarries***.

The parties acknowledge that alimony will not begin until such time the Final Decree is signed.

(Emphasis added.) Thus, Husband was required to make "alimony support" payments to Wife beginning November 1, 1999, for ten years unless Mother remarried.

Several years later, on October 10, 2003, Husband filed a "Petition to Terminate Alimony *in Futuro* and to Alter or Amend Provisions of Final Decree." At the outset, Husband's petition characterized his alimony payments as "alimony *in futuro* for a period of ten years until [Wife] dies or remarries." He claimed that, due to a material change in circumstances, his alimony obligation should be terminated. In response, Wife noted that the alimony award was not contingent upon her death as alleged in Husband's petition. Wife argued that the award was not alimony *in futuro*, but rather was alimony *in solido*, which is not subject to judicial modification or termination.

On February 25, 2004, Husband filed a motion for summary judgment on the issue of whether the alimony award in the final decree was subject to modification. In his motion, he argued that the award of alimony to Wife was alimony *in futuro*, because the final decree provided for contingencies – the remarriage of Wife or the passage of ten years – for the termination or continuation of the alimony payment. In support of his argument, Husband cited *Waddey v. Waddey*, 6 S.W.3d 230 (Tenn. 1999), in which the Supreme Court of Tennessee stated that an alimony award is *in futuro* when the award "may be affected by contingencies agreed upon by the parties or imposed by courts." *Waddey*, 6 S.W.3d at 232. Wife argued, however, that the award in this case was alimony *in solido*, because it was for a definite sum of money and was intended by the parties to be a marital property distribution. She maintained that the contingency of Wife's remarriage does not make the *in solido* award into an *in futuro* award.

On May 4, 2004, the trial court entered an order denying Husband's motion for summary judgment. The trial court noted that the final decree did not include a "termination on death" contingency. The trial court reasoned, "It could be that since the Decree is silent [on the effect of Wife's death], it was intended that [the alimony payments] be paid to [Wife's] estate" upon her death, suggesting that it was an *in solido* award. Thus, looking at the entire divorce decree and the language of the alimony award, the trial court concluded that, because the alimony was not designed to cease upon the death of Wife, then "it was part and parcel of the distribution of marital property." The trial court rejected Husband's contention that the reasoning in *Waddey* was controlling, relying instead on "other cases cited by [Wife]." On that basis, the trial court concluded that the alimony set out in the final decree was alimony *in solido* and, therefore, not subject to modification. From that order, Husband now appeals.

On appeal, Husband makes the same argument made in the trial court, that the award of alimony in the final decree is alimony *in futuro*, not alimony *in solido*, and, therefore, it is subject to modification. We review the denial of a motion for summary judgment *de novo*, with no presumption of correctness in the trial court's decision. *Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d 338, 342 (Tenn. 2002). In this case, the facts are undisputed, and the only issue is

whether the award set out in the divorce decree was alimony *in futuro*, and therefore modifiable, or alimony *in solido*, not subject to modification. This is a question of law, which we review *de novo*, with no presumption of correctness. **State v. Levandowski**, 955 S.W.2d 603, 604 (Tenn. 1997).

At the time of the final decree in this case, Tennessee statutes provided for three types of alimony: rehabilitative, *in futuro*, and *in solido*. **See Reel v. Reel**, No. M1999-01151-COA-R3-CV, 2001 WL 434864, at *3 (Tenn. Ct. App. Apr. 30, 2001). Both rehabilitative and *in futuro* alimony are awarded to an economically disadvantaged spouse and are intended to replace the financial support that was incident to the marriage relationship. **See Self v. Self**, 861 S.W.2d 360, 362 (Tenn. 1993). Rehabilitative alimony is awarded to a disadvantaged spouse who is capable of being rehabilitated, a monetary award in an amount and for a time period to enable the disadvantaged spouse to become economically self-sufficient. **Id.** at 363. *In futuro,* or periodic, alimony is intended for a spouse not capable of appropriate rehabilitation, to provide long-term support and maintenance to an economically disadvantaged spouse. **Id.** at 361-62. For both *in futuro* and rehabilitative alimony, the amount and duration of the award may be modified where necessary to meet the equities of the case, upon a showing of a substantial and material change in circumstances. Tenn. Code Ann. § 36-5-101(d)(2) (Supp. 2004); *see also Waddey*, 6 S.W.3d at 233; *Self*, 861 S.W.2d at 363. Under the applicable statute, the trial court retains continuing jurisdiction in order to modify the award of rehabilitative alimony or alimony *in futuro* where necessary, until the award terminates. *Waddey*, 6 S.W.3d at 234. Such termination of the award may take place upon the occurrence of a contingency contained in the original decree, such as the death or remarriage of the obligee spouse. **Id.** Once the award of rehabilitative or *in futuro* alimony terminates, the trial court's ability to modify the award terminates as well. **Id.**

In contrast, alimony *in solido* is not considered support and maintenance for an economically disadvantaged spouse; indeed, the term may be a misnomer, since alimony *in solido* is in fact a form of division of marital property. **See Knowles v. Knowles**, No. M2001-01282-COA-R3-CV, 2002 WL 598551, at *6 (Tenn. Ct. App. Apr. 19, 2002). Alimony *in solido* may be awarded in a lump sum at the time of the final decree, or it may be awarded in the form of periodic payments for a given period of time. In either form, the award is of a definite amount. *Waddey*, 6 S.W.3d at 232. Since alimony *in solido* is a form of property division, it is non-modifiable and the trial court's jurisdiction over the award ends once the award becomes final. **Bryan v. Leach**, 85 S.W.3d 136, 145-46 (Tenn. Ct. App. 2001).

Therefore, the nature of the alimony award becomes important when one party seeks to modify or terminate the award. Discerning the nature of the award can also be challenging if the language of the decree is not sufficiently descriptive, since all three types of alimony are typically comprised of court-ordered periodic payments.[1] Against this backdrop, we examine the pertinent appellate decisions on the issue.

---

[1] Some of the difficulty will be alleviated by the promulgation of Tennessee Code Annotated § 36-5-121, effective July 1, 2005, which describes the characteristics of each type of alimony award in more detail.

In an early decision, the Tennessee Supreme Court sought to determine if an award of alimony could be extended or modified. *Self v. Self*, 861 S.W.2d 360 (Tenn. 1993). In *Self*, the trial court awarded the economically disadvantaged wife "support in the form of alimony *in solido* by paying directly to the wife the sum of $3,000.00 per month. . . ." *Id.* at 360. The final decree explained that this support would be "sufficient to allow her to be self supporting and obtain a Bachelor's Degree in a field of her choosing." *Id.* It stated that the payments would "cease on the wife's death or remarriage or upon the expiration of a term of forty-eight (48) consecutive months from the entry of the final order, whichever occurs first." *Id.* After the forty-eight month period had expired, the wife petitioned the trial court to extend the alimony payments on the grounds that she was unable to be rehabilitated.[2] The trial court denied the wife's petition, determining that it had lost jurisdiction over the matter because the award was for alimony *in solido*, to be paid for a specific time period. *Id.* at 361. The intermediate appellate court reversed, holding that the contingencies set out in the decree rendered the duration of the award uncertain and prevented the award from being *in solido*, and finding that the trial court retained jurisdiction to modify the award. *Id.* The Supreme Court reversed the court of appeals and held that the *in solido* alimony award was not rendered indefinite simply because of the inclusion of the remarriage or death contingencies. To find otherwise, the Court said, would "give[] credence to form rather than substance." *Id.* at 362. The Court emphasized that the purpose of the award was clearly rehabilitative, although the term "rehabilitative" was not used, in that the award of an *in solido* amount was intended to enable the wife to become economically self-sufficient within a limited time period. The Court stated that this "was more appropriate than a long-term award [of alimony *in futuro*] which would be subject to being increased or decreased upon a change of circumstances." Therefore, the court held, the award was alimony *in solido*, as stated by the trial court in the final divorce decree, and not subject to modification. *Id.* at 363.

A later decision by the Tennessee Supreme Court, relied upon by Husband, also addressed whether an alimony award was modifiable, employing a substantially different analysis and without referring to *Self*. In *Waddey v. Waddey*, *supra*, the parties were divorced by final decree that incorporated the parties' marital dissolution agreement. In the decree, the husband was required to pay the wife "as periodic alimony *in futuro*" $1,000 each month until "the death of Mrs. Waddey, the remarriage of Mrs. Waddey, or March 1, 1996, whichever event shall first occur." *Waddey*, 6 S.W.3d at 231. The decree stated that each party had "the right to petition the Court for proper modification of the provisions remaining within the jurisdiction of the Court upon a change of circumstance." *Id.* On March 29, 1996, after the termination date for the alimony payments had passed, the wife filed a petition with the trial court to extend the alimony award beyond the termination date to remain in force for the remainder of her life or until she remarried. The trial court denied the wife's petition, finding that the petition was untimely because the expiration date for the alimony had passed. *Id.* at 231-32. The intermediate appellate court affirmed on different grounds, finding that the alimony award was *in futuro* until the date of the last scheduled payment,

---

[2]This order was issued before promulgation of Tennessee Code Annotated § 36-5-101(d), effective April 30, 1993, which provided that an award of rehabilitative support was modifiable upon a showing of a substantial and material change in circumstances. *See Self*, 861 S.W.2d at 363.

but after the last scheduled payment, it converted into alimony *in solido*.[3] Therefore, for that reason, the intermediate appellate court held that the award was not subject to modification at that time. *Id.* at 232. On appeal, the Supreme Court granted certiorari to address whether the occurrence of a contingency in an award of alimony *in futuro* converts the *in futuro* award to an award of alimony *in solido*. In that context, the Supreme Court explained the difference between an award of alimony *in futuro* and alimony *in solido*:

> Whether alimony is *in futuro* or *in solido* is determined by either the definiteness or indefiniteness of the sum of alimony ordered to be paid at the time of the award. *McKee v. McKee*, 655 S.W.2d 164, 165 (Tenn. App. 1983). Alimony *in solido* is an award of a definite sum of alimony. *Spalding v. Spalding*, 597 S.W.2d 739, 741 (Tenn. App. 1980). Alimony *in solido* may be paid in installments provided the payments are ordered over a definite period of time and the sum of the alimony to be paid is ascertainable when awarded. *Id.* Alimony *in futuro*, however, lacks sum-certainty due to contingencies affecting the total amount of alimony to be paid. *McKee*, 655 S.W.2d at 165-66 (holding alimony was *in futuro* where husband was ordered to pay the mortgage note until either the son turned twenty-two or the house was sold). It is therefore clear that the duration of an award of alimony *in futuro* may be affected by contingencies agreed upon by the parties or imposed by courts.
>
> The continued payment of alimony in the case now before us was subject to three contingencies: remarriage, death, or the passage of March 1, 1996. These contingencies affected the duration of the alimony. Accordingly, the sum of the alimony payable to Mrs. Waddey was not determinable when the alimony was awarded. The mere happening of a contingency does not convert an award of alimony *in futuro* to an award of alimony *in solido*. The award of alimony *in solido* must be ascertainable when ordered, not years later when a contingency terminates the award. The Court of Appeals, therefore, erred in holding that the occurrence of a contingency converted an award of alimony in futuro to an award of alimony *in solido*.

*Waddey*, 6 S.W.3d at 232-33. Thus, the Court in *Waddey* stated that the nature of the award "is determined by either the definiteness or indefiniteness of the sum of alimony ordered to be paid at the time of the award." The Court explained that an award is *in solido* when the total sum awarded is "ascertainable when ordered." *Id.* When the duration of the award of alimony is affected by contingencies, the Court stated, the sum awarded is not determinable when ordered and, therefore, is not alimony *in solido*. Based on this, the Court held, an award of alimony *in futuro* is not converted to alimony *in solido* upon the occurrence of a contingency which terminates the payments. *Id.* at 232-33. Nevertheless, the Court found that the trial court did not retain jurisdiction to modify

---

[3]When the divorce decree was entered in September 1982, only two types of alimony were recognized, alimony *in futuro* and alimony *in solido*. Rehabilitative alimony was not included in the alimony statutes until the following year in 1983. *See Waddey*, 6 S.W.3d at 232 n.1.

the alimony *in futuro* once the payments had been terminated by the occurrence of a contingency. *Id.* at 234.

Wife cites a decision by the Eastern section of this Court, decided after *Waddey* and well after *Self*, which cites *Self* but does not discuss *Waddey*. In *Grissom v. Grissom*, 15 S.W.3d 474 (Tenn. Ct. App. 1999), the parties entered into an MDA which provided that the husband would pay the wife "$221,000, which alimony *in solido* shall be payable $425 per week for ten (10) years, or 520 consecutive weeks, on Fridays of each week, . . . however, the alimony *in solido* payments shall terminate upon the Wife's death." *Grissom*, 15 S.W.3d at 475. The award did not include a remarriage contingency. The wife remarried within one year of the parties' divorce. Soon thereafter, the husband filed a petition to terminate the alimony payments. Initially, the trial court simply held that the alimony payments terminated upon the wife's remarriage. *Id.* at 474. The Wife appealed, and the intermediate appellate court remanded the case, directing the trial court to hold an evidentiary hearing to determine the intent of the parties. *Id.* Upon remand, the trial court found that the contingency upon death provision was added for tax purposes, and that the parties intended that the alimony payments would not be modified unless the wife died. Nevertheless, the trial court found that the amount of the alimony was not calculable on the date it was awarded, and applied Tennessee Code Annotated § 36-5-101(a)(2)(B), which provides for automatic termination of alimony upon remarriage when the alimony is *in futuro* "or alimony the amount of which is not calculable. . . ."[4] *Id.* at 474-75. Thus, based on the statute, the trial court found that the husband's alimony obligation terminated upon the wife's remarriage. The wife appealed once again.

The appellate court first found that the statute relied upon by the trial court, Tennessee Code Annotated § 36-5-101(a)(2)(B), was applicable "when the court has ordered alimony *in futuro*, not when the parties have contractually bound themselves to a fixed alimony provision." *Id.* at 476. It went on to note that the statute stated that it applied to "alimony *in futuro* or alimony the amount of which is not calculable on the date the decree was entered," but did not expressly apply to awards of alimony *in solido*. *Id.* The appellate court emphasized that the parties' MDA repeatedly characterized the alimony as *in solido*. Citing *Self*, the appellate court held that the inclusion of a "termination on death" contingency in the *in solido* alimony award did not defeat its purpose as an *in solido* award intended as an element of the marital property division, stating, "The fact that payments would terminate upon the wife's death does not render the amount indefinite." *Id.* at 476. On this basis, the appellate court reversed the trial court and held that the husband's alimony obligation did not terminate upon the wife's remarriage. *Id.*

In all of these decisions, the ultimate decision of the appellate court was consistent with the description of the alimony in the divorce decree as either *in futuro* or *in solido*. In *Self*, the husband was ordered to pay "alimony *in solido*," and the award was deemed not modifiable despite the inclusion of contingencies upon death or remarriage. *Self*, 861 S.W.2d at 363. In *Waddey*, the

---

[4]This statute was later amended to provide that awards of alimony *in futuro* or "alimony the amount of which is not calculable on the date the decree was entered" shall terminate automatically upon either the death or the remarriage of the recipient of such alimony. *See* Tenn. Code Ann. § 36-5-101(a)(2)(B) (Supp. 2004).

husband agreed in the parties' MDA to pay "periodic alimony *in futuro*," and it was held that the trial court no longer had jurisdiction to modify the award because the award had terminated, and not because it had converted to alimony *in solido*. ***Waddey***, 6 S.W.3d at 232-33. In ***Grissom***, the parties' MDA provided that the husband would pay the wife "alimony *in solido*," and the appellate court held that the payments would not terminate upon the wife's remarriage. ***Grissom***, 15 S.W.3d at 475-76. In all of these cases, the presence or absence of contingencies did not change the express description of the form of alimony awarded.

In this case, however, the alimony award is not described as either *in futuro* or *in solido*. The parties' MDA, incorporated into the final decree, says only that "the Husband shall pay to the Wife the sum of $1,500.00 per month for *alimony support* for a period of ten (10) years or until such time she remarries." (Emphasis added.) Under these circumstances, we look to the language used and, as noted in ***Waddey***, the absence or presence of contingencies to determine if the award is of alimony *in futuro* or alimony *in solido*. The ***Waddey*** court indicated that the question of "[w]hether alimony is *in futuro* or *in solido* is determined by either the definiteness or indefiniteness of the sum of alimony ordered to be paid at the time of the award." ***Waddey***, 6 S.W.3d at 232. Alimony *in solido* is an award of a sum certain, while alimony *in futuro* "lacks sum-certainty due to contingencies affecting the total amount of alimony to be paid." ***Id.***

We note first that the payments are described in the parties' MDA as "alimony support" rather than as property division. The award also includes one contingency, termination upon Wife's remarriage, although notably it does not provide for the payments to cease upon Wife's death. The trial court below determined that the omission of the "termination on death" contingency distinguished this case from ***Waddey*** and indicated that the award was alimony *in solido*. The trial court stated, "It could be that since the Decree is silent, it was intended that [the alimony payments] be made to [Wife's] estate [upon the death of Wife]." While the question is close, in the absence of an express designation in the decree of the nature of the alimony as *in futuro* or *in solido*, we cannot ignore the fact that the remarriage contingency affects the definitiveness of the sum of Husband's alimony payments. The remarriage contingency requires that, if Wife chooses to remarry, then she must forfeit any further support from Husband, under the apparent presumption that her new spouse will contribute to her support.[5] If the alimony award were simply a division of marital property, then Wife's remarriage would not be relevant, and Wife would continue to get the full benefit of the sum certain payment, albeit over a period of time. Thus, under ***Waddey***, because the alimony awarded in this case "lacks sum-certainty due to [the contingency] affecting the total amount of alimony to be paid," we must conclude that the award is alimony *in futuro*, rather than *in solido*. ***Waddey***, 6 S.W.3d at 232. Therefore, the alimony award is subject to modification, and the trial court's holding to the contrary must be reversed.

---

[5]We note, however, that this contingency is completely within Wife's control, unlike the "termination on death" contingency.

The decision of the trial court is reversed and the cause is remanded for further proceedings consistent with this Opinion. Costs on appeal are to be taxed to Appellee Barbara J. Schmidt, for which execution may issue, if necessary.

_____

HOLLY M. KIRBY, JUDGE